**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN F. MILLER, | ) | **Bankruptcy No. 17-11015-TPA** |
| | ) | |
| Debtor. | ) | **Chapter 13** |
| _____ | X | |
| | ) | |
| JOHN F. MILLER, | ) | **Adversary No. 18-01009-JAD** |
| | ) | |
| Plaintiff, | ) | **Related to ECF #70** |
| | ) | |
| - v - | ) | |
| | ) | |
| MERCER COUNTY STATE | ) | |
| BANK and DANIEL EICHER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | X | |

<u>**MEMORANDUM OPINION**</u>

It is this Court's practice to direct the Clerk to place on the public docket all communications concerning or relating to cases or proceedings before it.

On March 6, 2020, the Court received a letter dated March 5, 2020 from Andrew S. Brenc, Esquire, who served as counsel to co-defendant Mr. Daniel Eicher.

Counsel sent this letter despite the fact that it was not invited by the Court, and Rule 9003 of the Federal Rules of Bankruptcy Procedure precludes *ex parte* communications by attorneys concerning particular cases or proceedings. <u>See</u> Fed.R.Bankr.P. 9003(a).

The Court is perplexed as to the purpose of this unsolicited communication because the above-captioned adversary proceeding has long been closed. Indeed,

this adversary proceeding was administratively closed by text entry on the docket dated August 23, 2019.

Moreover, this Court's involvement in the adversary proceeding terminated on December 20, 2018, which is over a year ago, when the United States District Court for the Western District of Pennsylvania withdrew the reference because the parties were ready to proceed with a jury trial regarding Mr. Miller's lawsuit against Mr. Eicher (the essence of which was breach of construction contract and similar claims). See 1:18-cv-00108-SPB, ECF #6.

The record further reflects that by order dated January 29, 2019, the action was dismissed with prejudice upon motion made by the Plaintiff (Mr. Miller) pursuant to Fed.R.Civ.P. 41. See id. at  ECF ## 9 and 10.

Given the current posture of the case, the Court is perplexed by the purpose of counsel's letter.  According to the first page of the letter, its purpose appears to be both unsolicited "career advice" and to "pass along some information" which "may or may not be of use" to the Court.  The letter also states counsel's hope that the letter "does some good."

Within the letter, counsel describes the nature of the causes of action asserted against Mr. Eicher, the nature of the construction work performed by Mr. Eicher at the request of Mr. Miller, and that the case involved about "$18,000 in dispute, maximum, but more than likely $11,000)[.]"

Counsel's letter also discusses the location of Mr. Miller's home, describing

-2-

it as being located in "po dunk."  He also describes Mr. Miller as a person who

"stiffed" Mr. Eicher "without repercussion."

Counsel's letter also states, in pertinent part, the following:

> During [the final pre-trial conference] you asked
> the attorneys why such a small case had proceeded to
> the pre-trial hearing stage.  After the other lawyer offered
> his obfuscated version of events, I bluntly said that the
> case was meritless, and that the only reason it had been
> filed was because the debtor and his attorney were
> looking to fund the Chapter 13 plan.

> Your response to me was something along the
> lines of, "well, counselor, no summary judgment motions
> have been filed, and in my experience, those get filed
> when the case is meritless."  I did not respond then
> because it would have served no purpose and it is not
> my wont to be contentious with Judges.

The letter also describes the fact that, after the reference was withdrawn

so that a jury trial may proceed, Mr. Miller voluntarily dismissed the action with

prejudice.  The stated reason for the voluntary dismissal by Mr. Miller was the fact

that "the costs were prohibitive and the chances of getting paid were low."

Counsel's letter then recites the standard for summary judgment in federal

proceedings, and states that this adversary proceeding was nothing but a "shake

down, and the man suing him– the debtor– was protected by the rules of that

system."  Counsel's letter makes these accusations, despite the fact that counsel

acknowledges that there was a factual dispute between the parties, thus

necessitating Mr. Eicher's demand for a jury trial.

The letter also avers that Mr. Miller's attorney was protected by "the system"

as well, thus implying that counsel should have been sanctioned for bringing this lawsuit (which, as set forth above, was voluntarily dismissed). Ultimately, the letter concludes by counsel stating that "I hope this has been useful to you."

A generous reading of the letter is that counsel seeks to inform the Court of the outcome of the litigation. After all, this Court's involvement was limited. That is, the record reflects that another judge in this district was assigned to the case, but recused himself. Thereafter, the matter was reassigned to the undersigned judge, who simply approved a few uncontested motions to extend the discovery period and presided over the final pre-trial conference before the reference was withdrawn by the District Court thereby moving the case along to the jury trial phase.

Logic, however, dictates that the purpose of counsel's letter is not to inform this Court of the outcome of the lawsuit because those matters are of public record. In these circumstances, are there other reasons for the letter? For example, is the purpose of the letter to belatedly castigate and insult Mr. Miller or his counsel? Also, why does counsel describe Mr. Miller's home as being in the "middle of po dunk?" Why is such statement necessary or appropriate?

According to Merriam-Webster, the definition of "podunk" is a "small, unimportant, and isolated town." It is true that Mr. Miller resides in Conneautville, Pennsylvania, which is a relatively small town in terms of population. But, Mr. Miller's home is hardly one that the Court considers isolated

or unimportant. In fact, Conneautville, Pennsylvania is located southwest of Erie, Pennsylvania and its citizens are equally as important to the Court along with all of the other litigants, including Mr. Eicher, who have cases and proceedings here.

Perhaps the purpose of the letter is to suggest, albeit after-the-fact, that Mr. Miller or his counsel should have been sanctioned[1] for commencing a lawsuit that they ultimately withdrew with prejudice before a jury could be empaneled. In this regard, the letter complains without support that the rules of the bankruptcy system protected Mr. Miller and his attorney from any consequences of the alleged "shake down."

The letter filed by counsel conveniently ignores that applicable rules of bankruptcy procedure offer litigants a myriad of protections against abusive litigation. One such rule is Rule 11 of the Federal Rules of Civil Procedure, which is incorporated into bankruptcy proceedings by operation of Federal Rule of Bankruptcy Procedure 9011.

This rule subjects attorneys to sanctions when he or she submits a petition, pleading, written motion, or other paper to the Court that falls into one of four categories:

> (1)    the document was submitted for an improper purpose (i.e., to harass or drive up the cost of litigation);

---

[1]  The Court's discussion regarding sanctions should not be construed as a finding, either positively or negatively, that Mr. Miller or his counsel engaged in sanctionable conduct.  To be clear, had a motion been filed under Fed.R.Bankr.P. 9011, the Court would have examined the matter closely to determine whether the underlying litigation was frivolous.

    (2)    the claims contained in the document are frivolous because they lack support under existing law or no reasonable extension or reversal of existing law supports the claim;

    (3)    the allegations contained in the document are frivolous because they lack evidentiary support or are unlikely to have evidentiary support upon further investigation; or

    (4)    any denials in the document are unwarranted based on the evidence.

<u>See</u> Fed.R.Bankr.P. 9011(b)(1-4).

There are various procedural requirements dictating how and when a motion for sanctions is to be presented pursuant to Fed.R.Bankr.P. 9011. These procedural requirements are simple and easy to follow. For example, Fed.R.Bankr.P.9011(c) requires that the target of the sanctions motion be afforded "notice and a reasonable opportunity to respond[.]"

The rule also requires that the sanction request "be made separately from other motions or requests and shall describe the specific conduct" giving rise to the relief requested. <u>See</u> Fed.R.Bankr.P. 9011(c)(1)(A).

The rule further contains a "safe harbor" provision. This safe harbor provision states that the "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected[.]" <u>Id</u>.

The net effect of this "safe harbor" provision is that the offending lawyer has an opportunity to withdraw the frivolous claim, and the failure to do so subjects

the offending lawyer to the risk that (a) the Court will find the claims frivolous,

and (b) award sanctions and attorney's fees in favor of the party injured as a

result of the offending lawyer's presentment and continuation of frivolous

litigation.

*Sub judice*, a review of the record reveals that counsel for Mr. Eicher never

filed a motion for sanctions against Mr. Miller's counsel (or against Mr. Miller)

under either Fed.R.Bankr.P. 9011 or other applicable law.[2]

Not only was a sanctions motion never filed, the time period for doing so

long expired because Mr. Miller's lawsuit against Mr. Eicher was dismissed by the

District Court over a year ago.  This conclusion is supported by the fact that the

United States Court of Appeals for the Third Circuit has instructed that a request

for "Rule 11 sanctions be filed in the district court before the entry of a final

judgment." Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 99 (3d Cir. 1988).

Given these circumstances, perhaps the purpose of counsel's letter is to

complain that the Court did not s*ua sponte* sanction Mr. Miller or his counsel for

---

[2]   Sanction authority also exists for federal courts outside of Fed.R.Bankr.P. 9011 and
Fed.R.Civ.P. 11.  The United States Supreme Court has observed that federal courts have the "inherent
authority to impose sanctions upon those who would abuse the judicial process." Republic of the
Phillipines v. Westinghouse Elec., 43 F.3d 65, 73 (3d Cir. 1994)(citing Chambers v. NASCO, Inc., 501
U.S. 32, 43-44 (1991)).  This authority emanates from "the control necessarily vested in courts to manage
their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers, 501 U.S.
at 43; see also Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962).  The United States Supreme Court
has further instructed that this inherent power must be "exercised with restraint and discretion."
Chambers, 501 U.S. at 44.  Towards that end, the Third Circuit Court of Appeals has held that a
sanctioning court "must insure that there is an adequate factual predicate for flexing its substantial
muscle under its inherent powers, and must ensure that the sanction is tailored to address the harm
identified." Republic of Philipines, 43 F.3d at74.

prosecuting what counsel describes as a "meritless" lawsuit.

Fed.R.Bankr.P. 9011 states that the Court may on "its own initiative" enter "an order describing the specific conduct that appears to violate [Fed.R.Bankr.P. 9011(b)] and directing an attorney, law firm, or party show cause why it has not violated [Fed.R.Bankr.P. 9011(b).]" See Fed.R.9011(c)(1)(B).

Reliance upon this rule is problematic because the record reflects that at no time during the period that the Court was presiding over this matter did counsel for Mr. Eicher ever present any evidence supporting Mr. Eicher's defense that Mr. Miller's cause of action was "meritless." That is, no summary judgment motion was ever filed by the defense, no testimonial or affidavit evidence was presented to the Court for consideration, and the Court is not a clairvoyant that can ascertain the evidence that may exist in counsel's files. Absent the presentation of such evidence by counsel, the Court was never in a position to *sua sponte* issue a rule to show cause under Fed.R.Bankr.P. 9011(c)(1)(B) or any other law affording the Court with the power to sanction frivolous litigation.

Not to be lost in this discussion is the fact that the District Court withdrew the reference of this adversary proceeding at the request of Mr. Eicher. Naturally, this request was made by counsel on behalf of Mr. Eicher, and the net effect of such withdrawal was that from and after the withdrawal of the reference the power to hear and decide matters raised in this adversary proceeding was shifted from this Court to the United States District Court. Accordingly, this Court lacked

the ability to entertain any sanctions request, even if Mr. Miller's lawsuit was frivolous. It was therefore incumbent upon counsel for Mr. Eicher to file a sanctions motion before the District Court if Mr. Eicher wanted to pursue such consequences in light of Mr. Miller's decision to abandon his lawsuit. The record nonetheless reflects that counsel to Mr. Eicher filed neither a written response to Mr. Miller's dismissal request nor did he file a motion seeking sanctions before the District Court.

A fair inference that can be drawn from the letter most recently filed by counsel for Mr. Eicher is that even if a sanctions motion had been brought, the outcome of the proceeding would be far from certain. For example, counsel acknowledges the following in his letter:

> . . . Summary Judgment is only possible when there are no genuine disputes of material facts. In this case, it was contract law, and there was no issue of law at all. The only issues were, of course, fact. They claimed all the work was subpar. It plainly was not. The case rose and fell on that, and not the law.

By this paragraph of the letter, counsel concedes his belief that while the weight of the evidence supported his client's defense, there existed material disputes of fact in the underlying litigation which necessitated a trial. If this concession is true, there would be no basis to seek sanctions under Fed.R.Bankr.P. 9011 because the United States Court of Appeals for the Third Circuit has held: "sanctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling. Substantially more is required." <u>Gaiardo v.</u>

Ethyl Corp, 835 F.2d 479, 483 (3d Cir. 1987) (citing Lieb v. Topstone Indus., Inc.,

788 F.2d 151, 157-58 (3d Cir. 1986)).   Stated in other words, a mere loser of a

case does not translate to a sanctionable case *per se*. Neitzke v. Williams, 490 U.S.

319, 329 (1989)("not all unsuccessful claims are frivolous").

Perhaps the root of counsel's letter is his dissatisfaction with the colloquy

that occurred at the final pre-trial conference held before this Court prior to the

District Court withdrawing the reference.   This pre-trial conference lasted just

eight minutes, and the entire colloquy is set forth below:

| | |
|---|---|
| THE COURT: | Please be seated. The first matter relates to John F. Miller, Case Number 17-11015. We're here in Adversary 18-1009. This is the date and time set for the pretrial conference. Is Mr. Nagurney here? |
| UNIDENTIFIED: | He's in the hallway, Your Honor. |
| THE COURT: | Okay. Here we go. I'm calling the Miller matter. If I can have appearances, please. Good morning. |
| MR. NAGURNEY: | Good morning, Judge. John Nagurney for the debtor/plaintiff. |
| THE COURT: | Thank you. |
| MS. EBECK: | Good morning, Your Honor. Keri Ebeck on behalf of Mercer County State Bank. |
| THE COURT: | What's the status? I mean, is this case ready for trial, it looks like? |
| MR. NAGURNEY: | I believe so, at least with regard to Eicher. We have a settlement with Mercer County State Bank. |

-10-

THE COURT:          Are you Mr. Eicher?

MR. BRENC:          No, I'm his attorney, Your Honor.

THE COURT:          Okay. If you could enter your appearance,
                    please.

MR. BRENC:          My name is Andrew Brenc, attorney for
                    Defendant Daniel Eicher.

THE COURT:          Have you folks made efforts to settling the
                    matter at all?

MR. NAGURNEY:       We've had very little communication, Judge.

THE COURT:          Why is that?

MR. NAGURNEY:       Because we haven't.

THE COURT:          Well, I -- Mr. Nagurney, I can appreciate that.
                    You know? But you have a lawsuit that's filed.
                    And sure, you know, you can try the matter. But
                    usually folks try to settle, though, too. I mean, is
                    it something that is just absolutely incapable of
                    settling? Because you know, we here at the
                    court, whether it's here or the District Court,
                    we're here every day. But you want to empanel a
                    jury and bring in citizens and take up their
                    hard-working days. And I'm sure both of you
                    can appreciate the fact that the compensation
                    for a juror to be empaneled cost them -- you
                    know, they get paid what, $40 a day or $60 a
                    day? And I'm sure that, when they are at work,
                    they probably get paid more.

MR. NAGURNEY:       Your Honor, my -- I'm sure there's some
                    flexibility with my client. I don't know about Mr.
                    Brenc.

MR. BRENC:          Did you want me to speak, Your Honor?

THE COURT:          Yes, sir.

MR. BRENC:          May I speak freely?

THE COURT:          Yes, uh-huh.

MR. BRENC:          This case, as I noted in my pretrial statement,
                    derives from work that was done almost four
                    years before the filing of this adversary
                    proceeding. My client was essentially stiffed out
                    of $10,000. He's a plain person, meaning he's
                    Amish. They don't sue. He let the $10,000 go
                    and he got on with his life. Three and a half
                    years later, this adversary case was filed,
                    claiming $18,000 in alleged misconstruction.
                    This is a frivolous case. This is being used to
                    help pay for this, hopefully, Chapter 13 case.
                    There's no merit whatsoever. My client shouldn't
                    have to pay a dime. The true settlement here
                    should be zero dollars. So, if Mr. Nagurney was
                    suggesting we have had no communication
                    because we're clearly on opposite sides, he's
                    correct.

MR. NAGURNEY:       Your Honor, I'll point out one thing. When I was
                    reviewing my paperwork this morning on the
                    consolidated pretrial, I did fail to upload the
                    exhibits from Mr. Brenc, and I will take care of
                    that this afternoon. And we disagree with that
                    characterization of the case.

THE COURT:          No, I understand that.

(Pause in proceedings)

THE COURT:          And mister -- is it Brenc?

MR. BRENC:          Brenc.

THE COURT:          Brenc? You'd like this -- you'd like the United
                    States District Court Judge to preside over the
                    jury trial. Is that what your request is?

MR. BRENC:          I did file a motion to remove the case, to remove

the reference, Your Honor, yes, withdraw the reference.

THE COURT:           And Judge Baxter's office, they haven't ruled on that motion yet?

MR. BRENC:           They have not ruled on the motion.

THE COURT:           Okay. Any opposition if I make inquiry with Judge Baxter's chambers to see the status of that motion to withdraw the reference?

MR. BRENC:           No, of course not, Your Honor.

THE COURT:           Any opposition, Mr. Nagurney?

MR. NAGURNEY:  No, Your Honor.

THE COURT:           One concern I have, and this just goes to the mechanics of actually trying the case, and that is, as I'm sure you folks have been aware, that the District Court has been short staffed, in terms of number of judges. You know, Judge Baxter, she's just been sworn in as a District Court Judge. And as you know, she served as a U.S. Magistrate Judge for a number of years. And the Court had been bringing in visiting judges from across the country to help with the case load. I can't give any assurances as to actually when a jury would be empaneled and when it would take place. I'm not sure of the backlog for the District Court.

MR. BRENC:           My client is certainly in no rush, Your Honor.

THE COURT:           Okay. All right. I'll make inquiry with Judge Baxter's chambers and you'll get some form of scheduling order from either this Court or that Court. I do encourage you folks to settle. I -- you know, if the case is frivolous, then one would have thought we'd have received a motion for summary judgment, and we didn't receive that,

-13-

so now the case is going to trial. I just think we need to be considerate of jurors, just given the amount of time that you are imposing upon these citizens. I don't know. That's how I operated when I was a lawyer. Okay?

MR. NAGURNEY: Your Honor, obviously, the fact that I've settled with Mercer County State Bank demonstrates that my client is willing to cut a deal.

MR. BRENC: Was that a monetary settlement?

THE COURT: What was the terms of the settlement?

MS. EBECK: It's a loan modification, Your Honor, so it involves monetary terms, but it's a loan modification. Your Honor, I'd just like to add to that –

THE COURT: I'm assuming all those terms are in the record because settlements -- did you file a motion for settlement in front of Judge Agresti?

MS. EBECK: We have not filed a motion to approve the settlement yet, Your Honor. It would be filed within 30 days, that's what I wanted to advise the Court.

MR. NAGURNEY: Your Honor –

MS. EBECK: But we do have a settlement agreement actually drafted and approved by all the parties.

MR. NAGURNEY: Should that go to Judge Agresti or to you?

THE COURT: That should go to judge –

MR. NAGURNEY: Yeah, I know.

THE COURT: Any opposition if I check with Judge Agresti's chambers, in terms of -- file it. If Judge Agresti wants me to hear the motion to approve

settlement then a scheduling order will be
issued that says that. But I'll make an inquiry
with his –

MR. NAGURNEY:  Thank you, Judge.

THE COURT:      -- with his –

MS. EBECK:       Thank you, Your Honor.

THE COURT:      -- chambers to see. Okay? All right. Very good.

MR. NAGURNEY:  Thank you.

THE COURT:      Thank you very much.

<u>See</u> ECF #71, Transcript of Pre-Trial Conference Held November 13, 2018 at pp.

3-8.[3]

What can be gleaned by this colloquy is that the Court was concerned about

the fact that none of the parties made any effort to settle this adversary proceeding

and very little communication about the matter occurred between counsel.

The Court had concern about the lack of settlement effort for various

reasons.  Those reasons include the fact that while settlements are not forced

upon litigants, settlement discussions are encouraged in all litigation in the

---

[3]  A couple of additional observations are in order.  First, at no time did the Court ever state that
this lawsuit by Mr. Miller against Mr. Eicher was a "small case."  Yes, it involved less than $20,000
in controversy, but the Court is quite sure that neither Mr. Eicher nor Mr. Miller considered the case
"small."  Second, counsel for Mr. Miller did not just describe the claims set forth in the complaint as
"meritless."  He described them as being "frivolous" as well.  According to the United States Supreme
Court, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous
where it lacks an arguable basis either in law or in fact.  As Courts of Appeals have recognized, [the
term] 'frivolous,' when applied to a complaint, embraces not only inarguable legal conclusions, but also
the fanciful factual allegation." <u>Nietzke</u>, 490 U.S. at 325.

-15-

federal system because alternative dispute resolution may provide quicker, less expensive, and potentially more satisfying alternatives to litigation or risks presented by litigation. Encouraging settlement also preserves the limited resources of the judiciary, moves dockets quicker, and avoids the time and expense that ordinary citizens might incur by jury service.

To put this Court's concern in context, the initial pre-trial order in this case required that counsel be prepared to discuss settlement at the initial pre-trial conference. See ECF #4, at page 2 of the First Pre-Trial Order. That apparently was not done since there was admittedly "very little communication" between counsel.

In addition, the United States District Court for the Western District of Pennsylvania mandates the use of alternative dispute resolution in most civil cases, See WD Pa. Civ. R. 16-2, and this local rule was adopted in the wake of the Civil Justice Reform Act of 1990 and the Alternative Dispute Resolution Act of 1998. Certainly, if the instant litigation was ultimately to be tried before the District Court, the parties should be encouraged from the outset to discuss settlement options as they are clearly contemplated by the District Court's local rules.

It thus appeared that no settlement talks occurred between counsel, and this fact surprised the Court. When pressed as to why settlement was not explored by the parties, counsel to Mr. Miller acknowledged that there "was

flexibility" with his client.  Conversely, counsel to Mr. Eicher stated to the Court that the case "was a frivolous case," that "there is no merit whatsoever," and that a "true settlement should be for zero dollars."

It was in response to these statements that the Court made the comment that the Court's experience is that summary judgement motions are usually brought when the underlying litigation is frivolous.  The inference being that since none were filed in this adversary proceeding, triable issues remained; which in-turn suggests that the parties should have had some preliminary motivation to have a settlement dialogue of some sort.

Apparently counsel to Mr. Eicher takes issue with the Court's comments. Of course, counsel cites no authority supporting his heartburn, and a quick review of authorities reveals that various federal courts agree with this Court's perception or experience.

For example, the late Justice Thurgood Marshall observed that to the extent litigation is frivolous, "the plaintiff can be hastened by summary judgment." Kleppe v. Sierra Club, 427 U.S. 390, 422 (1976)(quotations omitted)(citing Barlow v. Collins, 397 U.S. 159, 175 n. 10 (1970)); Fidelity & Deposit Co. v. United States, 187 U.S. 315, 320 (1902)(summary judgment is proper to "preserve the court from frivolous defenses and to defeat attempts to use formal pleading as means to delay the recovery of just demands"); see also Blackhawk Heating & Plumbing v. Driver, 433 F.3d 1137, 1141 (D.C. Cir. 1970)(Rule 56 "admirably" serves to "eliminate...

-17-

frivolous lawsuits"); Charles E. Clark, The Summary Judgment, 36 Minn. L.Rev.

567, 568 (1952)(summary judgment is appropriate for sham or frivolous defenses);

cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(summary judgment

should be granted if a "reasonable jury could [not find] for the nonmoving party").

In addition, the court in Gailiard v. Fleet Mortgage Corp., observed:

> Summary judgment serves the useful purpose of disposing of meritless claims before the court and the parties become entrenched in frivolous litigation. Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2nd Cir.1987). Although summary judgment is an extreme remedy, the courts should not be reluctant to grant summary judgment in appropriate cases; indeed, summary judgment is mandated where appropriate. Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir.1989); Meiri v. Dacon, 759 F.2d 989, 998 (2nd Cir.1985), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); United States v. Porter, 581 F.2d 698, 703 (8th Cir.1978); Estate of Detwiler v. Offenbecher, 728 F.Supp. 103, 134 (S.D.N.Y.1989); Burleson v. Illinois Farmers Ins., 725 F.Supp. 1489, 1490 (S.D.Ind.1989).

Gailiard, 880 F.Supp. 1085, 1087-88 (D.S.C. 1995).

What can be gleaned from these cases, and others, is that summary

judgment is one form of remedy which is available to litigants so that they may

obtain an early exit from frivolous claims.  This remedy, however, was not sought

in this case by the defense.  Instead, as it was his right to do so, Mr. Eicher chose

instead to proceed to the trial phase of this case.  Thereafter, citing the costs of

further litigation and other things, Mr. Miller then voluntarily dismissed the action

with prejudice before a jury could be empaneled.

Presently, well after this Court's involvement in the litigation ended and the

civil action was voluntarily dismissed before the District Court, counsel for Mr.

Eicher has now submitted a letter, which the Court has reviewed and considered.

According to longstanding precedent, "[f]ederal courts may not decide

questions that cannot affect the rights of litigants in the case before them or give

opinions advising what the law would be upon a hypothetical state of facts."

Chafin v. Chafin, 568 U.S. 165, 171–72 (2013)(quoting North Carolina v. Rice, 404

U.S. 244, 246 (1971) (per curiam).

Federal judicial power may not be exercised unless there is a "legal

controversy that is real and not hypothetical," affecting the parties in a "concrete

manner so as to provide the factual predicate for reasoned adjudication," with

sufficiently adverse parties so as "to sharpen issues for judicial resolution." Int'l

Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly,

815 F.2d 912, 915 (3d Cir.1987).

The record reflects that the letter filed by counsel does not assert a case or

controversy giving rise to this Court's subject-matter jurisdiction. For this reason,

an order shall be entered that strikes the letter for want of jurisdiction.

Date: March 30, 2020

The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:    Andrew Brenc, Esquire
       John Nagurney, Esquire
       Chapter 13 Trustee
       Office of the U.S. Trustee

FILED
3/30/20 11:08 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA